UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TYREEN DICKERSON,

    *Plaintiff*,

  v.

FRANK BISIGNANO, Comissioner of Social Security,[1]

    *Defendant*.

Civil Action No. 24-2976 (SLS)

Judge Sparkle L. Sooknanan

## MEMORANDUM OPINION

Tyreen Dickerson is a young man who has been diagnosed with several mental impairments, including oppositional defiant disorder, attention deficit hyperactivity disorder (ADHD), and unspecified neurocognitive disorder, among others. In 2007, when Mr. Dickerson was about five years old, the Social Security Administration (SSA) determined that Mr. Dickerson was disabled and began issuing him benefits. When he turned eighteen, the SSA automatically re-evaluated that determination, eventually concluding that Mr. Dickerson is no longer disabled. Mr. Dickerson sued the Commissioner of Social Security, challenging the administrative law judge's (ALJ) conclusion. He contends that the ALJ's decision failed to comport with regulatory requirements prescribing the explanations that disability determinations must include. He also contends that the ALJ improperly accepted evidence from a vocational expert. The Court agrees with Mr. Dickerson's first argument, and so it declines to address the second.

---

[1] The current Commissioner is substituted for his predecessor pursuant to Federal Rule of Civil Procedure 25(d).

## BACKGROUND

### A.  Statutory Background

"The Social Security Act establishes a program for providing 'disability insurance benefits' to eligible individuals and 'supplemental security income to individuals who have attained age 65 or are blind or disabled.'" *Cunningham v. Colvin*, 46 F. Supp. 3d 26, 28 (D.D.C. 2014) (citing 42 U.S.C. §§ 423, 1381, 1381a). A non-blind individual is disabled if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "To make a disability determination, 'an ALJ gathers evidence, holds a hearing, takes testimony, and performs a five-step legal evaluation of the claimant using that evidence.'" *Venzon v. O'Malley*, No. 23-cv-1377, 2024 WL 2300295, at *1 (D.D.C. May 21, 2024) (quoting *Davis v. Berryhill*, 272 F. Supp. 3d 154, 158 (D.D.C. 2017)).

> Under the five-step evaluation, the ALJ determines, "sequential[ly]," whether:
>
> (1) the claimant is presently engaged in substantial gainful activity; (2) the claimant has a medically severe impairment or impairments; (3) the claimant's impairment is equivalent to one of the impairments listed in the appendix of the relevant disability regulation; (4) the impairment prevents the claimant from performing her past relevant work; and (5) the claimant, in light of her age, education, work experience and Residual Functional Capacity ("RFC"), can still perform another job that is available in the national economy.

*Id.* (quoting *Davis*, 272 F. Supp. 3d at 158–59). "The claimant bears the burden of proof during the first four steps, but the burden shifts to the SSA Commissioner at step five." *Cunningham*, 46 F. Supp. 3d at 28.

The most salient step in this case is step three, whether the "claimant's impairment is equivalent to one of the impairments listed in the appendix of the relevant disability regulation." *Venzon*, 2024 WL 2300295, at *1 (quoting *Davis*, 272 F. Supp. 3d at 159). A claimant's

impairments are "medically equivalent to a listed impairment . . . if it is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 416.926(a). For "mental disorders," the medical-equivalence inquiry considers "the areas of mental functioning a person uses in a work setting": (1) "Understand, remember, or apply information"; (2) "interact with others"; (3) "concentrate, persist, or maintain pace"; and (4) "adapt or manage oneself." *Id.* pt. 404, Subpart P, app. 1; *see also Id.* § 404.1520a(c)(3). The SSA evaluates the "degree of limitation in these areas" using a "five-point scale": "None, mild, moderate, marked, and extreme." *Id.* § 404.1520a(c)(4). For an individual's impairments to be medically equivalent to many of the listed impairments, it must "result in 'extreme' limitation of one, or 'marked' limitation of two, of the four areas of mental functioning." *Id.* pt. 404, Subpart P, app. 1.

**B.      Factual & Procedural Background**

In 2007, when Mr. Dickerson was a minor, the SSA determined that Mr. Dickerson was disabled and therefore entitled to social security payments. Administrative Record (AR) 10, 114, ECF No. 7. In 2021, after Mr. Dickerson turned eighteen, the SSA re-evaluated whether Mr. Dickerson qualified for social security payments under the disability rules for adults. AR 10, 137. The SSA determined that Mr. Dickerson was not disabled. AR 93, 137.

Mr. Dickerson requested a hearing before an ALJ to challenge that decision. AR 10. He explained that he "has problems with understanding, following instructions, completing tasks, and concentration." AR 18. In his September 2023 decision, the ALJ concluded that Mr. Dickerson had no past relevant work. AR 29. Next, the ALJ found that Mr. Dickerson "had the following severe impairments: a mental impairment variously diagnosed as [ADHD], oppositional defiant disorder, unspecified neurocognitive disorder, and learning disability, asthma, allergic rhinitis, and obesity." AR 12. But, at step three of the five-step inquiry, the ALJ determined that Mr. Dickerson

"did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments" because he "has not had the minimal capacity to adapt to changes in his environment and there are not two marked, nor is there one extreme[,] functional limitation." AR 13.

The ALJ detailed his conclusions about each of the four areas of mental functioning. He determined that Mr. Dickerson has a "moderate limitation" in "understanding, remembering, or applying information." AR 13. Among other things, the ALJ identified that Mr. Dickerson has a high school education with a special education background, that he testified he has problems with understanding, and that a mental status exam "revealed he had average intelligence." *Id.* In "interacting with others," the ALJ determined that Mr. Dickerson has a "moderate limitation," noting evidence reflecting that he "could interact adequately with supervisors, coworkers, and the public." AR 14. Next, with respect to "concentrating, persisting[,] or maintaining pace," the ALJ determined that Mr. Dickerson has a "moderate limitation." *Id.* The ALJ explained that Mr. Dickerson "has been diagnosed with [ADHD]," but that he "goes shopping in stores and by computer for games and instruments, and he is able to count change." *Id.* Finally, for "adapting or managing oneself," the ALJ determined that Mr. Dickerson "has experienced a moderate limitation." *Id.* The ALJ identified a psychiatric assessment revealing that Mr. Dickerson was "easily frustrated if there were a lot of noise," but the ALJ also pointed to a mental status exam in which Mr. Dickerson "had a normal mood and appropriate affect," with his "thought process [being] goal directed" and his "thought content [being] appropriate." *Id.* Accordingly, the ALJ concluded that Mr. Dickerson's mental impairments were not medically equivalent to an impairment listed in the relevant disability regulation. AR 13.

The ALJ next turned to Mr. Dickerson's Residual Functioning Capacity (RFC). AR 16. The ALJ concluded that Mr. Dickerson had the RFC to perform "light work," but he articulated several limitations on that capacity.[2] *Id.* Finally, the ALJ accepted testimony by a vocational expert who testified that someone like Mr. Dickerson would be able to do work "that exists in significant numbers in the national economy." AR 30. Summing up, the ALJ concluded that Mr. Dickerson's disability had ended in January 2022, and that Mr. Dickerson had not become disabled since then. *Id.*

Mr. Dickerson then appealed to the SSA's Appeals Council, which denied his request for review. AR 1. In October 2024, Mr. Dickerson filed a Complaint in this Court against the Commissioner of Social Security. ECF No. 1. The Complaint alleges that the SSA's decision was not based on substantial evidence, and it requests that this Court reverse the SSA's decision and award him benefits. Compl. at 2. In April 2025, Mr. Dickerson filed a Motion for Judgment of Reversal. ECF No. 9. The Commissioner filed a Motion for Judgment of Affirmance. ECF No. 14. These motions are fully briefed and ripe for review. *See* Pl.'s Opp'n Def.'s Mot. J. Affirmance & Reply Def.'s Opp'n (Pl.'s Opp'n), ECF No. 16; Def.'s Mem. Supp. His Mot. J. Affirmance & Opp'n Pl.'s Mot. J. Reversal (Def.'s Opp'n), ECF No. 15.

---

[2] In detail, the ALJ concluded that Mr. Dickerson "has had the residual functional capacity to perform light work . . . except the claimant has the residual functional capacity to occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk for a total of about six hours in an eight-hour workday, sit for a total of about six hours in an eight-hour workday, and frequently climb ramps, stairs, ladders, ropes and scaffolds, balance, stoop, kneel, crouch and crawl. He must avoid concentrated exposure to fumes, odors, dust, gases, poor ventilation, smoke, respiratory irritants, extreme heat, extreme cold, and hazards (machinery, heights, etc.). He requires the ability to alternate between sitting and standing about every 30 minutes. He is limited to performing simple, one-to-step [sic], routine, repetitive tasks in a low stress work environment, defined as requiring only occasional decision making and occasional changes in the work setting, where there would only have occasional contact with co-workers and supervisors, and no contact with the general public, and which would not require a fast pace or production quotas such as would customarily be found on an assembly line." AR 16.

**LEGAL STANDARD**

"Under the Social Security Act, 42 U.S.C. § 405(g), district courts are empowered to review decisions of the SSA, but not substitute their judgment for that of the SSA." *Banks v. Astrue*, 537 F. Supp. 2d 75, 77 (D.D.C. 2008). "A district court sits in what is essentially an appellate role when it reviews the Commissioner's disability determination, which must be upheld 'if it is supported by substantial evidence and is not tainted by an error of law.'" *Grant v. Kijakazi*, 619 F. Supp. 3d 128, 135 (D.D.C. 2022) (quoting *Smith v. Bowen*, 826 F.2d 1120, 1121 (D.C. Cir. 1987)). "Substantial evidence . . . is 'more than a mere scintilla'"; "[i]t means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "The plaintiff bears the burden of demonstrating that the Commissioner's decision [was] not based on substantial evidence or that incorrect legal standards were applied." *Cunningham*, 46 F. Supp. 3d at 33 (quoting *Muldrow v. Astrue*, No. 11-cv-1385, 2012 WL 2877697, at *6 (D.D.C. July 11, 2012)).

**DISCUSSION**

Mr. Dickerson contends that the ALJ's decision was defective because it (1) inadequately discussed the medical opinions of Dr. Atlener Artis-Trower, a physician who has treated Mr. Dickerson for ten years, Pl.'s Statement P. & A. (Statement) at 8–9, ECF. No. 10; AR 457; and (2) incorrectly accepted the testimony of a vocational expert, Statement at 10. The Court agrees that the ALJ's assessment of Dr. Artis-Trower's opinions did not comply with SSA regulations, so it declines to address Mr. Dickerson's second argument.

Mr. Dickerson argues that the ALJ failed to comply with SSA regulations by inadequately assessing the persuasiveness of Dr. Artis-Trower's opinions. Statement at 8–9. By regulation, "medical findings from a medical source are evaluated by analyzing (1) the supportability of the

opinion (that is, the 'objective medical evidence and supporting explanations presented by [the] medical source to support his or her medical opinion[ ]') and (2) the consistency of the opinion with other evidence in the record." *Crystal M. v. O'Malley*, No. 22-cv-2381, 2024 WL 6083881, at *10 (D.D.C. July 11, 2024) (alterations in original) (quoting 20 C.F.R. § 416.920c(c)(1)); *see also* 20 C.F.R. § 416.920c(b)(2). ALJs are also directed to consider other, less important factors, including "the medical source's relationship with the claimant" and "the specialization of the medical source." *Crystal M.*, 2024 WL 6083881, at *10 (citing 20 C.F.R. § 416.920c(c)(3)–(5)). "These regulations set forth a minimum level of articulation to be provided in determinations and decisions, in order to provide sufficient rationale for a reviewing adjudicator or court; where an ALJ does not meet these minimum levels of articulation, the court's ability to determine whether the plaintiff's disability determination was supported by substantial evidence is frustrated." *Id.* (cleaned up).

In Mr. Dickerson's view, the ALJ's discussion of Dr. Artis-Trower's medical opinions violated these regulations. Statement at 8–9. The ALJ's decision recounted reports from Dr. Artis-Trower in November 2022 and February 2023. AR 24. Relevant here, Dr. Artis-Trower diagnosed Mr. Dickerson with "[ADHD], combined type," "Oppositional defiant disorder," and "PTSD"—further noting a "Marked" limitation in "[t]he ability to maintain attention and concentration for extended periods of time" as well as "[t]he ability to perform at a consistent pace with a standard number and length of breaks." AR 455–56, 461–62. The ALJ acknowledged these opinions, as well as Dr. Artis-Trower's other opinions, in his decision. AR 24–25. But the ALJ concluded that these opinions were only "somewhat persuasive." AR 25. He explained: "the marked limitations are not supported by objective findings or subjective reports as PHQ-2 scores have been consistently zero (0) and few significant objective findings have been noted." *Id.*

7

In Mr. Dickerson's view, this discussion violated 20 C.F.R. § 416.920c(b)(2), which says that the SSA will "explain how [it] considered the supportability and consistency factors for a medical source's medical opinions." *See* Statement at 8–9. Mr. Dickerson argues that the ALJ's discussion "does nothing to address supportability" because "an adequate discussion of supportability would note that Dr. Artis-Trower supported her opinion with citation to diagnoses of [ADHD] (combined type) and PTSD, and that . . . she cited an additional diagnosis of Oppositional Defiant Disorder." Statement at 8. Mr. Dickerson further argues that the ALJ's "consistency analysis [was] insufficiently developed." Statement at 9. He contends that "a simple citation to 'few significant objective findings' is not specific enough to meet this requirement." *Id.*

"There is no specific format required for addressing supportability and consistency, and those terms need not be used in the opinion, provided that there is sufficient explanation for a reviewing court to determine that the ALJ analyzed those factors." *Stephanie G. v. O'Malley*, No. 22-cv-904, 2024 WL 2271821, at *11 (D.D.C. May 20, 2024) (alteration omitted) (quoting *David W. v. Kijakazi*, No. 21-cv-3370, 2023 WL 5035935, at *11 (D.D.C. Aug. 8, 2023)). Beginning with supportability, the ALJ explained that Dr. Artis-Trower's finding of marked limitations was "not supported by objective findings" and indeed that "few significant objective findings have been noted." AR 25. The ALJ's decision acknowledged that Mr. Dickerson reported difficulty following instructions and that he had been diagnosed with ADHD. AR 14. The ALJ concluded that this supported a moderate limitation in the functional area of "concentrating, persisting[,] or maintaining pace." *Id.* With respect to Dr. Artis-Trower's diagnosis of oppositional defiant disorder, the ALJ noted that "the oppositional defiant disorder was reportedly currently in

remission." AR 25. Although Mr. Dickerson may have wanted the ALJ to say more, it is incorrect to say that the decision failed to address supportability.[3]

But the same cannot be said about consistency. The Court recognizes that even a minimal discussion by the ALJ may be sufficient to comply with 20 C.F.R. § 416.920c(b)(2). For example, a court has found "a sufficient discussion of consistency" where "the ALJ simply discussed the opinion's relation to other evidence such as medical treatment records even though the ALJ did not make these comments specifically in reference to the medical opinion's persuasiveness." *David W.*, 2023 WL 5035935, at *12 (citing *Cody v. Comm'r of Soc. Sec. Admin.*, No. 20-cv-2620, 2021 WL 6012228, at *6–*7 (D.S.C. Oct. 27, 2021), *rep. and recommendation adopted sub nom.*, *Belinda C. v. Comm'r of Soc. Sec.*, No. 20-cv-2620, 2021 WL 6011067 (D.S.C. Dec. 17, 2021)). And another court found a discussion sufficient where "the ALJ not only mentioned differences between the medical source opinion and other record evidence, but he also explained why he found those differences important for assessing the persuasiveness of the medical source opinion." *Id.* Even compared to the minimal discussion accepted in those cases, the ALJ's decision here is inadequate. The decision does not make any comparison between Dr. Artis-Trower's opinions and any record evidence. *See* AR 25–26. That absence is hard to miss given that the ALJ's discussion of the opinions of *every other medical expert* explicitly addresses consistency—indeed, using the word "consistent." *See id.*

Citing to the same portions of the ALJ's decision discussed above, the Commissioner states that "the ALJ properly explained in his decision that Dr. Artis-Trower's . . . findings of marked

---

[3] Mr. Dickerson also takes issue with the ALJ's reference to "PHQ-2 scores." *See* AR 25. He says that "PHQ scores are meant to assess depression, not ADHD." Statement at 8. But even setting the ALJ's reference to those scores aside, for the reasons set out above, the ALJ's decision reflects that he considered whether Dr. Artis-Trower's opinions were supported.

9

limitations were . . . inconsistent with the objective findings and subjective reports." Def.'s Opp'n at 14. But the Commissioner does not quote or otherwise identify the aspect of the decision he had in mind. Instead, the Commissioner follows up that assertion with two pages of his own comparisons between Dr. Artis-Trower's opinions and other evidence. *Id.* at 16–17. Of course, the Commissioner's current views about the consistency between Dr. Artis-Trower's opinions and other evidence does nothing to show that the ALJ's decision complied with the SSA's regulatory obligation to "explain how [it] considered the . . . consistency factor[] for [Dr. Artis-Trower]'s medical opinions." 20 C.F.R. § 416.920c(b)(2); *see SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) ("[A] simple but fundamental rule of administrative law . . . is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency.").

For his part, Mr. Dickerson seems to believe that the ALJ's reference to "few significant objective findings" was related to the consistency factor, arguing that reference was "not specific enough to meet this requirement." Statement at 9. But that is not how the Court understands the ALJ's decision. To reiterate, the relevant portion of the ALJ's analysis respecting Dr. Artis-Trower's opinions was: "the marked limitations are not supported by objective findings or subjective reports as PHQ-2 scores have been consistently zero (0) and few significant objective findings have been noted." AR 25. As the Court reads this sentence, the "few significant objective findings" are a reason why "the marked limitations are not supported"—not a comment about the separate consistency factor. *Id.*

Thus, this is not a case in which a claimant challenges the "specific format" used by the ALJ to "address[] supportability and consistency," complaining that "those terms [were] not used

in the opinion." *Stephanie G.*, 2024 WL 2271821, at *11. Nor is it one in which the ALJ performed the requisite analysis elsewhere in the decision and is faulted for not "repeat[ing] these citations to the records a few pages later when he discussed his findings." *Crystal M.*, 2024 WL 6083881, at *14. Here, "[t]he ALJ's reasoning is not simply 'spare' . . . —in crucial particulars it is missing." *Butler v. Barnhart*, 353 F.3d 992, 1002 (D.C. Cir. 2004). The Court "can scarcely perform its assigned review function, limited though it is, without some indication" that the ALJ considered, "rather than simply ignored," the consistency of Dr. Artis-Trower's opinions with other evidence. *Id.* (quoting *Brown v. Bowen*, 794 F.2d 703, 708 (D.C. Cir. 1986)). SSA regulations, however, require that the ALJ address the consistency of all medical opinions. 20 C.F.R. § 416.920c(b)(2). And the medical opinions here were by a doctor who had treated Mr. Dickerson for ten years. AR 457. Ensuring that the ALJ has considered whether such opinions match with other evidence—especially when those opinions are contrary to the conclusion ultimately reached—is a principal reason for the explanation requirement. *See Stephanie G.*, 2024 WL 2271821, at *11 (explaining that 20 C.F.R. § 416.920c(b) is satisfied when "there is sufficient explanation for a reviewing court to determine that the ALJ analyzed [the regulatory] factors" (quoting *David W.*, 2023 WL 5035935, at *11)).

      To be clear, the Court is not faulting the ALJ for writing an insufficiently lengthy decision. The decision here was twenty pages long and detailed every fact and medical opinion in the record. *See* AR 18–27. Although there is something to be said for comprehensiveness, lengthy decisions are not necessarily in the interest of benefit applicants, ALJs, or courts. *Cf. Brown v. Berryhill*, No. 18-cv-589, 2019 WL 4538188, at *6 (D.D.C. 2019) ("An ALJ does not have to state on the record every reason justifying a decision. An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." (quoting *Brault v. SSA*, 683 F.3d 443, 448 (2d

11

Cir. 2012) (cleaned up))). Still, SSA regulations require ALJs to meet a minimum level of articulation regarding the persuasiveness of medical opinions. 20 C.F.R. § 416.920c(b). ALJs should consider how they can discharge that regulatory responsibility without talismanically using the words "consistent" and "supported," while also keeping their decisions concise.

## REMEDIES

Under 42 U.S.C. § 405(g), the Court has the power to "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." Pursuant to this provision, the Court will reverse the ALJ's decision and remand the case to the Commissioner for further proceedings. The Court expresses no view about the degree Dr. Artis-Trower's opinions should be considered persuasive, or whether the ALJ's decision was supported by substantial evidence.

## CONCLUSION

For the foregoing reasons, the Court grants Mr. Dickerson's Motion for Judgment of Reversal, ECF No. 9, and denies the Commissioner's Motion for Judgment of Affirmance, ECF No. 14. The Court remands this case to the Commissioner of Social Security for further proceedings consistent with this decision.

A separate order will issue.

_____
SPARKLE L. SOOKNANAN
United States District Judge

Date:   October 30, 2025